IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NATALIYA POSTOLOVSKA, aka           Civ. No. 04-6421-HO
NATALIYA EHRENSTEIN,
                                    Order
        Plaintiff,

    v.

ALLSTATE LIFE INSURANCE
COMPANY,

        Defendant.

Plaintiff filed a motion for summary judgment on her first claim for breach of contract for failure to pay life insurance benefits.

## Undisputed Facts

Defendant issued life insurance policies to Manuel Ehrenstein as follows: (1) policy 713855064, face value $300,000, issued June 21, 1996, (2) policy 730249678R, face value $100,000, issued June 19, 2000, (3) policy 700534121, face value $200,000, issued March 9, 2001, and (4) policy 761088549, face value $178,000, issued November 3, 2003.

Plaintiff married Ehrenstein in Springfield, Oregon on February 16, 2004. Plaintiff is named as the sole beneficiary on the aforementioned life insurance policies. On May 6, 2004, plaintiff contacted defendant to report Ehrenstein's death in Mexico, and to make a claim for insurance proceeds.

Defendant received the following information in the course of its investigation: Ehrenstein became ill at the Guadalajara office of businessman Leobrado Trujillo Alvarez on May 6, 2004; Trujillo called Dr. Oscar Bocanegra Rivas to come to the scene; Dr. Bocanegra Rivas was unable to revive Ehrenstein; Alvarez Trujillo arranged for transport of Ehrenstein's body directly to a funeral home; and Ehrenstein's body was cremated in Mexico on May 8, 2004.

Defendant refused to pay the policy benefits sought by plaintiff, and denied plaintiff's claim for policy benefits by letter dated September 8, 2004.

The following facts are taken from defendant's statement of additional facts. The facts are deemed admitted for purposes of resolving plaintiff's motion because plaintiff filed no response to defendant's statement of additional facts.[1] L.R. 56(f). More than two months after his reported death, Ehrenstein's former

---

[1] Plaintiff also does not appear to contest defendant's additional facts with her reply brief. Rather, plaintiff's argument is that, considering all of the evidence, no reasonable trier of fact could return a verdict in favor of defendant.

2 - ORDER

brother-in-law, Alberto Sanchez Castellanos, saw Ehrenstein alive at a Guadalajara restaurant. Investigator Maximino Antonio de la Mora Soto met Sanchez Castellanos at the restaurant and confirmed for himself based on photographs in his possession that the man identified by Sanchez Castellanos was Ehrenstein.

Plaintiff and Ehrenstein lived together at 6557 E. Street, Springfield, Oregon. They traveled to Guadalajara to arrange for the repair and sale of equipment owned by plaintiff and located in Guadalajara.

According to plaintiff, Ehrenstein died on May 6, 2004, in Alvarez Trujillo's office. Alvarez Trujillo's office address is 4795 Gabriel D'Anuncio Street, Guadalajara. The death certificate lists Ehrenstein's "residence address" as 4795 Gabriel D'Anuncio Street in Guadalajara, and states that Ehrenstein died "in his home." The death certificate further states that the cause of death was "A) Cerebral Vascular Accident 05 Years B) Pulmonary Emphysema C) Hypertension."

In his application for Policy No. 761088549, Ehrenstein represented that he had never been treated for, had any sign or symptom of, or been told that he had, among other things, high blood pressure, aneurysm, or emphysema or other lung disorder. He also answered in the negative when asked if, in the past 10 years, he sought or received advice for a stroke. According to Ehrenstein's treating physician, Dr. Valero Haro, Ehrenstein's

3 - ORDER

"cardiopulmonary condition was always stable and his arterial pressure was also stable." Dr. Valero Haro also stated that "[t]here was never any compromise seen with respect to his pulmonary function over the years that I saw him."

When De La Mora began his investigation, neither the funeral home nor the crematorium were able to immediately locate or produce documentary evidence confirming Ehrenstein's alleged wake and cremation.

## Discussion

Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

According to plaintiff, defendant denied her claim for benefits based on information and belief that Ehrenstein did not die, and with respect to policy 761088549, for the additional reason that Ehrenstein made false statements on the application regarding his medical condition. Plaintiff argues that the evidence of Ehrenstein's death is overwhelming, so that no reasonable trier of fact could conclude that he is alive. Plaintiff further argues that there is no evidence to support defendant's allegation that Ehrenstein lied about his medical condition on his application for policy 761088549.

Plaintiff submitted the following evidence to prove Ehrenstein's death. Plaintiff, Alvarez Trujillo and Dr.

Bocanegra Rivas each state they witnessed Ehrenstein's death. Dr. Bocanegra Rivas states he prepared and signed the death certificate. Jose de Jesus Garcia Casillas states he signed the death certificate as a witness. Pablo Cerda Salas, a funeral home worker, states that he photographed, fingerprinted and cremated Ehrenstein's body. Plaintiff submitted copies of the death certificate, a "civil registry ticket" )apparently evidence the cremation of Ehrenstein's body), a receipt of payment for cremation, a cremation authorization form, a photograph stated by Cerda Salas to depict Ehrenstein's body, funeral home paperwork (including copies of fingerprints), witness statements given to Mexican authorities investigating Ehrenstein's death, and an expert's conclusion that fingerprints on Ehrenstein's military identification card are from the same person as the fingerprints on the funeral home paperwork.

Plaintiff also submitted a declaration and letter by Dr. Valero Haro, apparently to prove that Ehrenstein did not misrepresent his medical condition on his application for policy 761088549. Dr. Valero Haro wrote that "nicotinism" was Ehrenstein's only coronary risk factor of import, "[t]here was never any compromise seen with regard to his pulmonary function over the years that I saw him," and "[h]is cardiopulmonary condition was always stable and his arterial pressure was also stable." Valero Haro Aff., Ex. B.

Defendant submitted, <u>inter alia</u>, excerpts of the investigative report provided to defendant by Altima Investigations, the affidavit of investigator Antonio de la Mora Soto, and the affidavit of Alberto Sanchez Castellanos, Ehrenstein's former brother in law. De la Mora Soto and Sanchez Castellanos state they each saw Ehrenstein at a restaurant on July 22, 2004, more than two months after his alleged death. De la Mora recognized Ehrenstein based on photographs in his possession. Sanchez Castellanos states Ehrenstein saw him, "and a startled and worried expression registered on his face." Sanchez Castellanos Aff., ¶ 4. De la Mora Soto states that he followed Enrenstein by taxi cab, and that Ehrenstein drove off at approximately 80 miles per hour. He states he is confident that Ehrenstein knew he had been sighted and was purposely attempting to elude the cab. De la Mora Soto Aff., ¶ 15. De la Mora further states that the person he followed out of the restaurant had very short legs, consistent with the description given him by Adriana Martinez, Ehrenstein's ex-wife.

At the summary judgment stage, the evidence of the non-movant is to be believed. <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 255 (1986). Defendant's evidence proves the existence of a genuine dispute over the very material issue of whether Ehrenstein died. Plaintiff is therefore not entitled to summary judgment. The court finds it unnecessary to determine at this

6 - ORDER

time whether there is any evidence to support defendant's allegation that Ehrenstein misrepresented his medical condition on his application for policy 761088549.

## Conclusion

Based on the foregoing, plaintiff's motion for partial summary judgment [#8] is denied. Defendant's unopposed motion for leave to cite additional authority [#37] is granted.

IT IS SO ORDERED.

DATED this 12th day of May, 2005.

_____
United States District Judge